IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DERRICK JACKSON, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 00-PWG-1808-S |
| HOUSING AUTHORITY OF THE BIRMINGHAM DISTRICT, | ) |
| Defendant. | ) |

MEMORANDUM OF OPINION

Derrick D. Jackson, plaintiff herein, filed this complaint against the Housing Authority of the Birmingham District ("HABD") alleging violations of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. section 2000, et seq., and 42 U.S.C. section 1981 based on sexually hostile work environment, *quid pro quo* sexual harassment, and retaliation (constructive discharge). (Second Amended Complaint, document #19). The complaint further alleged a state law cause of action for negligent supervision and/or retention.

The matter is before the magistrate judge pursuant to 28 U.S.C. section 636(c)(1). Before the court is HABD's motion for summary judgment. (Document #24).

In Jackson's response to defendant's motion for summary judgment, he stated that he voluntarily dismisses his claims of retaliation and constructive discharge.[1] Although Jackson did not explicitly state that he was dismissing his "*quid pro quo* sexual harassment" claim, this claim was not factually or legally argued in his response and is DISMISSED. *Coalition for the Abolition*

---

[1] These claims were raised as only one claim in the second amended complaint.

*of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325-26 (11th Cir. 2000).[2/] The remaining claims are: (1) the no adverse tangible employment action claim, referred to in the complaint as a hostile work environment claim, and (2) the negligent supervision and/or retention claim.

## APPLICABLE LAW

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the

---

[2/] The terms *quid pro quo* and "hostile environment" are no longer accurate labels following the Supreme Court's decisions in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). Instead, the *quid pro quo* claim should be treated as an adverse tangible employment action claim and the hostile work environment claim should be treated as one in which no adverse tangible employment action occurred. *Frederick v. Sprint/United Management Company & Sprint Communications Company*, 246 F.3d 1305, 1312 (11th Cir. 2001). Because Jackson did not present any evidence of an adverse tangible employment action in his response, he cannot proceed with the claim he identified as a *quid pro quo* claim. To the extent that Jackson may try to argue that a negative mid-year review constitutes an adverse tangible employment action, the Eleventh Circuit has decided this issue adversely to plaintiff. A negative employment evaluation, the only potentially "adverse tangible employment action" does not constitute such an action even if could affect future prospects. See *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1241-43 (11th Cir. 2001).

ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following facts are undisputed or, if disputed, viewed in the light most favorable to Mr. Jackson, the non-moving party. Mr. Jackson began working for HABD on July 8, 1996 as a Resident Selection Clerk (Jackson depo., pp. 18, 20). Ford was Mr. Jackson's supervisor throughout his employment with HABD. (Jackson depo., p. 31). Mr. Jackson alleges that Ford began sexually harassing Mr. Jackson almost immediately after he began working. (Jackson depo., p. 40). Specifically, Mr. Jackson complains of the following actions: Ford constantly stared at plaintiff's genital area. (Jackson depo, pp. 132-33).[3/] Ford touched plaintiff on the chest and the arms like he was "brushing stuff off o[f] me all the time, [I] felt like he was always dressing me, fixing stuff on

---

[3/] It is unclear from Jackson's deposition whether this was a daily, frequent or occasional occurrence. (See Jackson depo, pp, 132-33).

me." (Jackson depo, pp. 33-35).[4/]   Ford would come to Jackson's office and say it's time to go to lunch. (Jackson depo, p. 66). The first time that Jackson went to lunch with someone else and returned to work, Ford told him he was to go to lunch at a different time. (Jackson depo, pp. 66-67). Ford repeatedly invited Jackson to his home for drinks. (Jackson depo, p. 73). Ford noticed and commented on Mr. Jackson's appearance including when he gained weight or lost hair. (Jackson depo, p. 131). Ford walked by Jackson's door and stared at him every day. (Jackson depo, p. 266). On one occasion, Mr. Jackson entered Ford's office and Ford told him to zip his pants because "[i]t's probably not that big anyway." (Jackson depo, pp. 44, 46). Ford took plaintiff with him to housing sites (Jackson depo, p. 54) but told Jackson not to tell anyone in the office that these trips were taking place. (Jackson depo, p. 63). Coworkers told Jackson that they thought he and Ford were a couple (Jackson depo, p. 82) and called plaintiff Ford's "boy." (Jackson depo, p. 84).[5/]

Mr. Jackson dreaded going to work sometimes because he knew Ford would brush him (Jackson depo, pp. 36-37). Mr. Jackson did not, however, confront Ford about the brushing because he believed Ford would do something bad to him. Ford had told Mr. Jackson "of how many people he had gotten rid of." (Jackson depo, at pp. 40-42). Mr. Jackson did not tell Ford that he objected to going to lunch with him "[be]cause I knew my job was going to be jeopardized." (Jackson depo, at p. 69). Mr. Jackson did not respond to Ford's invitations for drinks directly with a yes or no. He would "just go to another conversation." (Jackson depo, pp. 76-77). Mr. Jackson, for example, told Ford that he was uncomfortable because someone was staring at him [plaintiff]. (Jackson depo, at

---

[4/] Pamela Wilson, a coworker at HABD stated in her sworn statement that she had witnessed "Mr. Ford touching and straighten[ing] other male employees' clothing;" however, she does not specifically state that she saw Ford straighten Jackson's clothing. (Exhibit 8)

[5/] Jackson could not identify anyone who referred to them as a couple or who called him Ford's boy. (J, p. 83-84).

4

p. 267). Mr. Jackson thought Ford "would get the picture that it was him, and to really leave me alone because it really makes me feel uncomfortable." (Jackson depo, at p. 267). Accordingly to plaintiff, however, Ford understood that a female counselor was staring at plaintiff. (Jackson depo, at p. 268).[6/] Mr. Jackson never told Ford that it was Ford that made him uncomfortable staring because "He was my manager and who is going to protect me after I tell him all that, who is going to protect me the next day and the day after that." (Jackson depo, at p. 269). Jackson states that he was too embarrassed to tell anyone about the unzipped pants incident. (Jackson depo, at p. 48).

On or about July 23, 1999, Ford performed a mid-year review of Jackson's work performance (Jackson depo., p. 100; Exhibit 4) which allegedly contained false negative statements. (Jackson depo, p. 107). Specifically, Ford stated that Jackson was "not performing to his full potential;" that his "overall performance ha[d] decrease[d] since January 99;" that plaintiff "tend[s] to be rude when things are not going his way," that he "need[s] to spend more time at work station performing assigned duties." (Exhibit 4). Mr. Jackson refused to sign the review. (Jackson depo, p. 107). Mr. Jackson received a pay increase of 89 cents an hour effective July 1, 1999. (Jackson depo, at p. 104). Although he had not previously complained to human resources about Ford's behavior, when he received notice of the performance evaluation, he contacted Linda Carroll, Director of Lease Housing, Section 8. He told her what Ford had been doing to him and stated that the review comments were not true. (Jackson depo, pp.125-28). Mr. Jackson admits that he did not complain of Ford's behavior until after the evaluation because "It never affected my job until it came on paper, then I knew it was time to do something." (Jackson depo., p. 117). Carroll asked Jackson

---

[6/] Plaintiff testified in his deposition that a female employee also stared at him. (Jackson depo, at pp. 268-69).

speak to speak with Patricia Carter, the Director of Human Resources. (Carter depo, p. 18; exhibit 5).

Mr. Jackson told Carter that "Ford gives me weird looks that was not fitting ('another man looking at you the way that he shouldn't'), which makes me very uncomfortable" (Exhibit 5, p. 2). Jackson also told Carter that Ford invited him to his home for drinks. (Exhibit 5, p. 2). During the course of the investigation, Carter suggested that plaintiff be transferred to another position which was in a higher pay grade category. (Jackson depo, p. 189).[2/] Jackson worked in the new position for a day. He concluded, however, that although the new position had potential to pay more it required twice as much work with the same pay. He declined the job. (Jackson depo, p. 190, exhibit 5, p. 5) Mr. Jackson then returned to his position under Ford's supervision. (Exhibit 5, p. 5). Carter's investigation was concluded on August 13, 1999. (Carter affidavit). She found that there was no evidence to substantiate Jackson's charges. (Ford depo, p. 57; exhibit 5, p. 5). Mr. Jackson was "counseled regarding what sexual harassment is and is not and he was given a brochure to provide further clarification." (Exhibit 6). Jackson was also "requested to contact the Employee Assistance Program within forty-eight (48) hours to schedule an appointment with Dr. Lita Clark." (Exhibit 6). It was known by the Housing Authority that prior to the complaint about Ford, Mr. Jackson's father had passed away and Jackson also suffered from lingering injuries he had received in an automobile accident five or six months earlier in the year. (Jackson depo, pp. 200, 201, 224,

---

[2/]  Carter testified that Jackson "asked to be moved" because "he did not want to work for [] Ford any longer." (Carter depo, p. 34). Jackson, however testified that Carter suggested the transfer. (Jackson depo, p. 189). Because the facts are in dispute, the court will view them in the light suggested by Jackson, the nonmoving party.

225). In her affidavit, Carter stated:

> At the time of his complaints it was known that his father was suffering from a serious illness, and that Mr. Jackson was still recovering from injuries from an automobile accident five or six months earlier in the year. I was concerned about his well being, his safety, and the safety of HABD employees. At the initial interview in July of 1999, he expressed and exhibited a lot of anger, and I was concerned about his well being and the anger he expressed.

(Carter affidavit).[8/]

Following the investigation, Ford was neither reprimanded nor warned (Ford depo, pp. 16-17). Mr. Jackson continued under Ford's supervision. (Ford depo., p. 57). On October 18, 1999, Jackson resigned from HABD. (Exhibit 7; Carter affidavit). Mr. Jackson testified that after he made his complaint, he felt uncomfortable around his co-workers. (Jackson depo, p. 208), He testified that he left HABD because he felt that they were eventually going to fire him. (Jackson depo., p. 206).

I.      No adverse tangible employment action/sexually hostile work environment.

In *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999), the Eleventh Circuit Court of Appeals held:

> To establish a hostile-environment sexual-harassment claim under Title VII based on harassment by a supervisor, an employee must show: (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a

---

[8/] This is consistent with the recommendation in the investigative report where Carter recommended counseling "for purposes of anger management and personal stress reduction." (Exhibit 5, p. 5).

7

> discriminatorily abusive working environment; and
> (5) a basis for holding the employer liable. *Henson*, 682 F.2d at 903-05.

See also, *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 508 (11th Cir. 2000). The parties do not dispute that Jackson belongs to a protected group (men) and that Ford's comments and actions towards Jackson were based on Jackson's sex.

The second factor (unwelcome sexual harassment) and fourth factor (whether the harassment was sufficiently severe or pervasive) are intertwined and should be evaluated together. *Johnson*, 234 F.3d at 508-09:

> ... Title VII "does not prohibit all verbal or physical harassment in the workplace," and "does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 80-81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Instead, Title VII prohibits only the type of severe or pervasive sexual harassment that "alter[s] the conditions of the victim's employment." *Id.* at 81, 118 S.Ct. 998 (quotation omitted).
>
> Harassment is severe or pervasive for Title VII purposes only if it is both subjectively and objectively severe and pervasive. *Mendoza*, 195 F.3d at 1256. Harassment is subjectively severe and pervasive if the complaining employee perceives the harassment as severe and pervasive, and harassment is objectively severe and pervasive if a reasonable person in the plaintiff's position would adjudge the harassment severe and pervasive. *See id.* When determining whether harassment is objectively severe and pervasive, courts consider "the frequency of the conduct," "the severity of the conduct," "whether the conduct is physically threatening or humiliating, or a mere offensive utterance," and "whether the conduct unreasonably interferes with the employee's job performance." *Mendoza*, 195 F.3d at 1246.

The most serious conduct Jackson complains of is Ford's comment that he should zip his pants because his penis probably wasn't that big and Ford's frequent staring at Jackson and, more specifically, his genital area. It is doubtful whether Jackson has established the second factor - that he was subjected to unwelcome sexual harassment. Workplace harassment is not "automatically discrimination because of sex merely because the words used have sexual content or connotations." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998). A comment in jest between two men in the workplace, such as the comment about zipping his pants, while boorish, nevertheless represents one means by which men routinely interact with other men. Further, with respect to the frequent staring, *Mendoza*, 195 F.3d at 1248 is instructive:

> ...[A]lthough "following and staring" can betray romantic or sexual attraction, the everyday observation of fellow employees in the workplace is also a natural and unavoidable occurrence when people work together in close quarters or when a supervisor keeps an eye on employees.

Jackson clearly subjectively perceived Ford's conduct as harassing. With respect to the four objective factors: over the three and a half year period that Jackson was employed by HABD and supervised by Ford, the frequency of arguably overt sexual conduct was isolated and attenuated as only a single overtly sexual act took place, that being the comment about zipping his pants because his penis probably wasn't that big. The remaining conduct, while frequent, was not objectively overtly sexual (brushing Jackson's clothing; staring at Jackson, including his clothed genital area; telling him it was time to go to lunch; inviting Jackson for drinks; noticing weight gain and hair loss in Jackson, and taking Jackson to housing sites); the conduct was not severe (Jackson has identified no explicit sexual comments with the possible exception of the "zip your pants" comment; he has not presented any testimony that Ford ever touched him sexually, or proposed that they engage in

9

sex or inquired into Jackson's interest in homosexual intercourse); the conduct was not physically threatening nor humiliating (same as above); and the conduct itself did not interfere with Jackson's job ( Jackson testified that he did not complain of Ford's behavior until after the evaluation because "It never affected my job until it came on paper.") The conduct was not objectively harassing. Mr. Jackson has failed to show that the harassment was sufficiently severe or pervasive to alter the terms of employment and create a discriminatorily abusive working environment. Jackson has failed to establish that the conduct was sufficiently severe or pervasive thereby failing to establish a *prima facie* case.[9] While Ford's conduct was boorish, childish and inexcusable it does not rise to sexual harassment creating liability in his employer. Further, the court notes that Jackson has not stated what, if any, sexually harassing conduct occurred after he made his complaint and it was investigated.

II.  Negligent Supervision and Retention

Mr. Jackson alleges that after he told HABD officials of Ford's conduct, they had a duty not to retain an unworthy employee. After the Carter investigation, Jackson remained under Ford's supervision. HABD did not reprimand nor warn Ford. Jackson argues that he has demonstrated that a breach of HABD's duty to reasonably supervise proximately caused his injury.

---

[9] HABD is further entitled to assert the affirmative defense recognized in *Faragher* and *Ellerth*. HABD establishes the first element, that the employer exercised reasonable care to prevent and promptly correct harassing behavior by showing (1) that HABD had a sexual harassment policy of which Jackson was aware by virtue, at the very least, of his attendance of sexual harassment seminars (Exhibit C) and (2) that HABD investigated Jackson complaint promptly after it was made. The fact that HABD found no evidence to support Jackson's claim does not negate defendant's satisfaction of the first element. HABD establishes the second element, that the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer, or to otherwise avoid harm, by showing that Jackson did not report the alleged harassment for over three years and that he declined a transfer that would have removed him from Ford's supervision.

In *Stevenson v. Precision Standard, Inc.*, 762 So.2d 820 (Ala. 1999), the Alabama Supreme Court held that a plaintiff must prove misconduct on the part of the employee as a prerequisite to establishing a cause of action for negligent supervision. The court declined to recognize a cause of action for negligence in investigating a claim independent of proof of wrongful conduct of an employee. In that HABD is entitled to summary judgment on the sexual harassment claim, Mr. Jackson's negligent supervision/retention claim must also fail.

Moreover, in *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 1314, 1320 (N.D. Ala. 2002), the court held:

> In order to establish a claim against an employer for negligent supervision, training, and/or retention, the plaintiff must establish that the allegedly incompetent employee committed a common-law, Alabama tort. *Stevenson v. Precision Standard, Inc.*, 762 So.2d 820, 824 (Ala. 1999) (citing *Big B, Inc. v. Cottingham* 634 So.2d 999 (Ala. 1993)). As Alabama does not recognize a common-law tort for sex discrimination in employment, (footnote omitted)), the Court finds that Plaintiff cannot maintain an action for negligent supervision, training, and/or retention based upon conduct that is employment discrimination, but does not support a common-law tort.
>
> Therefore, Defendant's motion for summary judgment as to Plaintiff's negligent supervision, training, and retention claims is GRANTED.

Similarly, the plaintiff in this action could not maintain an action for negligent supervision and/or retention based on a claim of sexual harassment which is not a cause of action under Alabama law. See *Machem v. Childersburg Bancorporation, Inc.*, 761 So.2d 981, 983 n. 1 (Ala. 2000).

11

Finally, the claim for negligent supervision and/or retention is barred by Section 25-5-53, Ala. Code 1975, the exclusivity provision of Alabama's Workers' Compensation Act. *Cook v. AFC Enterprises*, ___ So.2d ___, 2002 WL 63694 (Alabama Civil App. 2002).

For the reasons set out above, HABD's motion for summary judgment is due to be granted. A separate Final Judgment consistent with this Memorandum of Opinion will be entered simultaneously herewith.

DONE this the 23rd day of July, 2002.

_____
PAUL W. GREENE
UNTIED STATES MAGISTRATE JUDGE